Butler, District Judge.
The suit is for collision. The material facts are as follows: On the afternoon of September 20, 1891, the Weed, a small tug, was passing up the western side of the Delaware river (well over) from League island to Walnut street wharf in company with another tug, the Ben Hooley. The latter was a few yards behind, probably a length, and slightly nearer the shore. The tide was ebb. When passing Greenwich piers the Bowen was seen coming down, about three *511 quarters of a mile above, also on the western side, but slightly eastward of the Weed’s course. A little later the Ben Hooley signaled the Bowen of her purpose to pass westward, by blowing two whistles, to which the latter replied with two, and immediately the Weed rejoined with an equal number. The Bowen turned slightly eastward, and the Weed and Hooley slightly westward. Soon after, and when near the Weed, the Bowen altered her course to westward, and ran into and sank her. At this time the Weed was nearly, if not quite, across the Hooley’s bows and very near her. Other vessels were passing up the river, most of them over eastward, and none between the Weed and Bowen after the signals were given. Among these vessels was the Goodnow, which was over to the east. It is a well established custom of the locality where the collision occurred, that vessels going up with an ebb tide, shall keep in shore, on either side of the channel, so as to avoid the current’s force, and those passing down shall keep well out in the stream. This statement disagrees, materially, with the respondent’s theory of the case, which is that the Weed was shut off from the Bowen’s view by the Goodnow, until near at hand, when she suddenty came out from behind the latter’s stern and ran westward across the Bowen’s bows, rendering the collision unavoidable. This theory is, however, in direct, irreconcilable conflict with the clear weight of the direct testimony on the subject. It is denied by all disinterested witnesses who saw the vessel (and they are numerous) and is supported only by those in charge of the Bowen, and responsible for her conduct. A vessel did come out from behind the Goodnow, but it is clearly proved that she was not the Weed. The respondent’s proctor candidly admits that the weight of direct testimony is against him; but he thinks surrounding circumstances show it to be unreliable. I do not agree with him respecting the effect of these circumstances. It is unnecessary to discuss them, but I may say in passing that while he thinks it virtually impossible to believe that the Bowen turned westward across the Weed’s bows, as the libelant’s witnesses testify, it seems to me no more difficult of belief than his contention that the Weed ran westward from a safe position behind the Goodnow, across the respondent’s bows, thus inviting the destruction which overtook her. Admitting the facts to be however, as above found, the respondent still contends that the Weed is alone responsible for the collision because, First, it was her duty under such circumstances to pass the Bowen eastward; second, she was wrongfully on the Western side of the channel; and, third, on failing to receive a repty to her whistles it was her duty to reverse and sound danger signals, which she did not. The first point is predicated on the supposition that the vessels were meeting virtually head on. As I have found this was not exactly their position, but granting it was, the fact is unimportant in view of the respondent’s signal that she was going eastward, and the Weed’s that she was going westward. It is a sufficient answer, I think, to the second point, to say that the Weed was not wrongfully on the western side. The custom respecting this part of .the river, justified her. The sailing rules prescribed by the *512 act of 1885 do not apply to the locality, which is within the port of Philadelphia. I do not think it important that the Bowen did not again signal in answer to the Weed,—as is assumed in the third point. The latter was fully justified in treating the previous signal as addressed to her as well as to the Hooley, which was in her company. The Bowen could not pass between these vessels, as the witnesses testify, and as is apparent from their situation. Going eastward of the Hooley, she must also go eastward of the Weed, why then require a second signal that she intended going eastward when the sound of the first had scarcely died away? The Weed and Hooley being substantially together, one signal was sufficient for both, and satisfied the requirements of the rule. The proofs show that such signaling conforms to the custom prevailing under such circumstances. I cannot doubt the respondent’s liability. Nor am I able to see that the Weed was guilty of any negligence contributing to the result. She immediately turned westward, on receiving the Bowen’s notification of her purpose to go eastward, and when the latter changed westward she went further over or endeavored to do so. It is doubtful whether she could have safely reversed in view of the Hooley’s position when the danger became apparent.
The libel against the Bowen is sustained. If the parties cannot agree on the amount of damages, a commissioner will be appointed. The libel against the Weed is dismissed.